IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Michael A.J. Mays,<br><br>        Plaintiff,<br><br>v.<br><br>Randy Pfister, et al.,<br><br>        Defendants. | No. 18-cv-2679<br><br>Honorable Nancy L. Maldonado |

**MEMORANDUM OPINION & ORDER**

Plaintiff Michael A.J. Mays brings this action against several Illinois Department of Corrections officials alleging multiple violations of his constitutional rights and Illinois state law in connection with his incarceration at Stateville Correctional Center. (Dkt. 70, Compl.) Before the Court is Defendants Major Lake, Adam Walsh, Michael Ardolino, and Carl Newey's (collectively, "Defendants") motion to dismiss Mays's Illinois state law claims for assault and battery (Count II) and intentional infliction of emotional distress (Count III). (Dkt. 113.) For the following reasons, the motion is granted in part and denied in part. Plaintiff's claims in Counts II and III against Defendants in their official capacities are dismissed. The Court, however, denies Defendants' motion to dismiss these claims to the extent they are brought against Defendants in their individual capacities.

**Background**

Plaintiff Michael A.J. Mays in his First Amended Complaint ("the Complaint") brings claims against Defendants Major Lake, Thomas J. Francis, Logan A. Robinson, Adam J. Walsh, Michael Ardolino, Carl C. Newey, and two John Doe Defendants, all of whom were Correctional Officers employed by the Illinois Department of Corrections ("IDOC") at all times relevant to

1

Mays's claims.[1] (Dkt. 70 ¶¶ 3–9.) Against these Defendants, Mays asserts the following claims: (1) a civil rights claim under 42 U.S.C. § 1983 alleging that Defendants used excessive force in violation of the Eighth Amendment (Count I); (2) a state law claim for Assault and Battery (Count II); (3) a state law claim for Intentional Infliction of Emotional Distress (Count III); and (4) Deliberate Indifference by refusing to provide Mays with a mental health consult (Count IV). Mays asserts these claims against Defendants in their individual and official capacities. (*Id.* ¶¶ 3–10.) As a remedy, Mays seeks compensatory and punitive damages. (*Id.* ¶ 1.)

To support his claims, Mays alleges the following facts in the Complaint which the Court accepts as true for the limited purpose of ruling on this motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Mays is currently incarcerated at Stateville Correctional Center, a maximum-security facility for adult males in Crest Hill, Illinois. (Dkt. 70 ¶ 2.) On the morning of July 16, 2016, Mays was handcuffed with his hands behind his back and removed from his cell so that correctional officers could conduct a search of the inmates' cells. (*Id.* ¶¶ 15–16.) During this process of being removed from his cell, Mays began to experience a panic attack. (*Id.* ¶ 17.) Mays alleges that the panic attack was related to post-traumatic stress disorder (PTSD) and other mental health issues he developed as a result of a prior attack by correctional officers at another facility. (*Id.* ¶ 18.) Mays therefore requested a mental health consult or to see a crisis team member. (*Id.* ¶ 19.) He directed this request to Major Lake, who told Mays that he would assist him but also told him to keep walking. (*Id.*) Mays and the other inmates were brought to the cafeteria where they remained handcuffed with their hands behind their backs for

---

[1] Mays also brings claims against Defendant Ms. Paige, a nurse or medical technician who Mays alleges was employed by IDOC at all times relevant to his allegations. (Dkt. 70 ¶ 11.) Paige, however, is not a party to the instant motion to dismiss.

2

nearly four and a half hours. (*Id*. ¶ 20.)

After the search of the inmates' cells was completed, Mays and the other inmates were escorted back to their cells and instructed to keep their heads down and not make eye contact with anyone while walking in formation. (*Id*. ¶¶ 21–22.) Mays states that he was unable to keep his head down, however, due to his PTSD and other mental health disorders stemming from being previously attacked by correctional officers. (*Id.* ¶ 23.). Mays states that he could not keep his head down even after a correctional officer yelled at him to do so. (*Id*. ¶¶ 23–24.) A correctional officer therefore pulled Mays out of the line and told him to face a steel wall that had spit stains on it, both old and fresh. (*Id*. ¶ 25.) Defendant Francis also instructed Mays to put his head against the wall directly in one of the spit stains, but Mays refused to comply. (*Id.* ¶ 26.) When Mays refused, Francis pushed Mays's head into the steel wall with significant force. (*Id*. ¶¶ 26–27.) Mays was handcuffed with his hands behind his back during this incident. (*Id*. ¶ 28.)

Mays then saw Lake and told him that this situation could have been avoided if Mays had received the mental health consult he had requested. (*Id*. ¶¶ 30–31.) When Lake responded that he did not care, Mays dropped to the ground and stated that he would not move without a mental health professional present. (*Id*. ¶¶ 32–33.) A correctional officer then called for back-up and restrained Mays by placing his legs into leg cuffs. (*Id*. ¶ 34.) Correctional officers then dragged Mays into a shower area and asked Mays if he would walk into the shower area voluntarily or whether they were going to have to throw him in. (*Id*. ¶¶ 35–37.) While being dragged, Mays continued to repeat his request for a mental health consult. (*Id*. ¶¶ 35–37.)

The officers then threw Mays into the shower area, while he was still handcuffed and in leg cuffs. (*Id*. ¶ 38.) Robinson, Walsh, Ardolino, and other correctional officers then forcibly held Mays down while one officer used a hook to tear away all of Mays's clothing, including his

3

underpants. (*Id.* ¶ 39.) Mays was in a state of extreme panic and attempted to resist the officers, yelling out that the officers were trying to kill him. (*Id.* ¶ 40.) With Mays's clothes forcibly removed, Mays contends that one of the correctional officers spread Mays's butt cheeks and rubbed his finger across Mays's anus. (*Id.* ¶ 41.) Mays continued to scream and resist the officers and feared for his life and safety. (*Id.* ¶¶ 42–43.) The officers then wrestled with Mays to put a jumpsuit at least partially on him, stood Mays upright and pushed him into the shower wall. (*Id.* ¶ 44.) Another officer pepper-sprayed Mays's eyes and mouth and then an officer put a black cloth over Mays's head. (*Id.* ¶ 46.) Mays was afraid that the officers were trying to strangle him, and he told the officers that he could not breathe. (*Id.* ¶ 46.) Mays asked the correctional officers if he could have water poured over his head to remove the pepper spray, to which the officers responded by putting Mays into a hot shower and telling him that he could not exit until a medical technician checked him. (*Id.* ¶ 49.)

After Mays was checked on by a medical technician, the officers forced Mays to walk through Stateville in a state of near undress to another room. (*Id.* ¶ 52.) Once there, the correctional officers poured water on Mays, and moved his handcuffs from behind his back, where they had been for nearly six hours, to his front. (*Id.*) Mays was then escorted by correctional officers to a hot steel cage in a van that was directly in the sun. (*Id.* ¶ 53.) The van was extremely hot with no air flow, as well as urine on the floor. (*Id.*) Mays remained in the cage, which burned and irritated his skin, for some time before officers eventually took him to Pontiac Correctional Center. (*Id.* ¶¶ 53–54.)

## **Legal Standard**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant, however, may move to dismiss

4

under Rule 12(b)(6) challenging the sufficiency of the complaint, as opposed to the complaint's merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak*, 810 F.3d at 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

Defendants filed the instant partial motion to dismiss under Fed. R. Civ. P. 12(b)(6) seeking dismissal of Mays's state law claims for assault and battery and intentional infliction of emotional distress. Defendants argue that, while the claims are pled against the Defendant correctional officers, they are really claims against the State of Illinois, and such claims against Illinois are barred by Illinois law on sovereign immunity.

Illinois law provides that "the State of Illinois shall not be made a defendant or party in any court," except as provided in certain statutes listed in this provision of the State Lawsuit Immunity Act. 745 ILCS 5/1. Rather, "[a]ll claims against the State founded upon any law of the State of Illinois," are under the exclusive jurisdiction of the Court of Claims. 745 ILCS 505/8(a). A plaintiff cannot circumvent this prohibition by suing a servant or agent of the State outside the Court of Claims "when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *T.S. v. County of Cook, Ill.*, 67 F.4th 884, 892 (7th Cir. 2023) (quoting

*Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978)). "In determining whether sovereign immunity applies to a particular case, substance takes precedence over form," and thus the Court must look to "the issues involved and the relief sought," to determine if claims alleged against state agents are in fact claims against the State. *Leetaru v. Bd. of Trustees*, 32 N.E.3d 583, 595 (Ill. 2015).

Sovereign immunity, however, does not prevent lawsuits alleging "that the State's agent acted in violation of statutory or constitutional law in excess of his authority." *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990); *see also Leetaru*, 32 N.E.3d at 596 ("This exception is premised on the principle that while legal acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not."). Based on this rule, Illinois law recognizes an "officer suit exception," which applies when a plaintiff "seek[s] to prospectively enjoin such unlawful conduct." *Parmar v. Madigan*, 106 N.E.3d 1004, 1009–10 (Ill. 2018).

Defendants argue that Mays's assault and battery and intentional infliction of emotional distress claims against them are, in reality, claims against the State based on the three-factor test the Illinois Supreme Court articulated in *Healy v. Vaupel*, 549 N.E.2d 1240 (Ill. 1990). Defendants further argue that the officer suit exception does not apply to Mays's claims because Mays only seeks damages and no injunctive relief.

In *T.S. v. County of Cook, Ill.*, 67 F.4th 884 (7th Cir. 2023), the Seventh Circuit interpreted Illinois law to outline the analysis courts should use to determine when claims are truly against the State under Illinois law with separate analysis depending on whether the claims are brought against state agents in their official capacities or their individual capacities. 67 F.4th at 893–94. In the Complaint, Mays states that Defendants are sued in both their individual and official capacities. (Dkt. 70 ¶¶ 3–8.) The Court will apply both analyses to determine if Mays's claims are barred by sovereign immunity.

6

**A. Official Capacity**

A claim against a state agent in the agent's official capacity "is 'not a suit against the official but rather a suit against the official's office. As such it is not different from a suit against the State itself.'" *T.S.*, 67 F.4th at 894 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Such claims do not run afoul of sovereign immunity under the officer suit exception which "applies when a plaintiff seeks to enjoin state officials from ongoing statutory or constitutional violations." *T.S.*, 67 F.4th at 894. In *T.S.*, the Seventh Circuit clarified the effect of the Illinois Supreme Court decision in *Parmar v. Madigan*, 106 N.E.3d 1004 (Ill. 2018), which caused confusion in this district as to whether the Illinois Supreme Court limited the officer suit exception to apply *only* to claims seeking prospective injunctive relief as opposed to damages for past wrongs. *See, e.g.*, *Bernard v. Baldwin*, No. 20-cv-5368, 2022 WL 847628, at *9–10 (N.D. Ill. Mar. 22, 2022) (collecting cases). According to the Seventh Circuit, "the officer suit exception does not apply in a damages suit." *T.S.*, 67 F.4th at 894 (reversing the district court for applying the officer suit exception to a case involving damages claims against a state agent in his personal capacity).

Defendants here argue that Mays cannot rely on the officer suit exception because he does not seek any prospective injunctive relief for his claims. Defendants are correct. Mays only seeks compensatory and punitive damages for his assault and battery and intentional infliction of emotional distress claims against Defendants and thus, the officer suit exception to sovereign immunity does not apply. Mays's assault and battery (Count II) and intentional infliction of emotional distress (Count III) claims against Defendants in their official capacities are therefore barred by sovereign immunity under Illinois law. The motion to dismiss is granted with respect to Counts II and III as to Defendants in their official capacities.

**B. Individual Capacity**

Having found that Mays's claims against the officers in their official capacities are barred, the Court turns next to the question of whether Mays can proceed against Defendants in their individual capacities, or if such claims must be brought in the Court of Claims. Illinois courts apply a three-factor test from *Healy* to determine if a lawsuit against a state agent in the agent's personal capacity is an action against the State. *T.S.*, 67 F.4th at 893–94 (describing Illinois law); *see also* 549 N.E.2d at 1247. As articulated by *Healy*, an action against a state agent is one against the State belonging in the Court of Claims:

> [W]hen "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee."

549 N.E.2d at 1247 (quoting *Robb v. Sutton*, 498 N.E.2d 267, 272 (Ill. App. Ct. 1986)). Applying these factors, the Court finds that Mays has sufficiently pled that Defendants acted beyond the scope of their authority during the incident he describes in the Complaint, and therefore can proceed on his claims against Defendants in their individual capacities.

**I. Assault and Battery**

Under Illinois law, "[b]attery is the unauthorized touching of another person." *Luss v. Vill. of Forest Park*, 878 N.E.2d 1193, 1206 (Ill. App. Ct. 2007). "An assault is a reasonable apprehension of an imminent battery." *Rosenberg v. Packerland Packing Co., Inc.*, 370 N.E. 1235, 1234 (Ill. App. Ct. 1977). Here, Mays alleges that Defendants "physically attacked and harmed [him] while he was unable and in no position to physically harm any Defendant," and that Defendants' attack was "not necessary to keep or restore order or discipline him . . . but instead was malicious and sadistic, and done only with the intent to cause harm to [him]." (Dkt. 70 ¶¶ 58–

8

59.) Correctional officers are not authorized to commit intentional torts such as assault and battery. *See Handy v. Evens*, No. 13 C 8795, 2014 WL 701572, at *2 (N.D. Ill. Dec. 11, 2014) ("No State employee has the authority to commit a legal wrong."). Defendants argue that they were acting in the scope of their employment when conducting a search of the inmates and their cells and while Mays was resisting the officers, which he admits in the Complaint. Mays, however, clearly alleges that Defendants did much more than merely search him or his cell, but rather that Defendants engaged in needless violence when Mays was handcuffed and leg cuffed. Specifically, Mays alleges that Defendants forcibly pushed his head into a wall, dragged him to the shower area where they threw him inside, forcibly removed his clothes, touched him in a private area, pepper-sprayed his face and placed a cloth on his head which he claimed prevented him from breathing. Mays has therefore sufficiently pled that Defendants acted beyond the scope of their authority. The Court finds that these claims are properly brought against Defendants and not against the State, and thus do not violate Illinois's sovereign immunity. Defendants' motion to dismiss is therefore denied as to Mays's assault and battery claims against them in their individual capacities.

**II. Intentional Infliction of Emotion Distress**

Under Illinois law, a claim for intentional infliction of emotional distress requires the plaintiff to show: (1) conduct that was "truly extreme and outrageous"; (2) that "the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress"; and (3) "the conduct must in fact cause severe emotional distress." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). Applying the same *Healy* analysis, the Court again finds that Mays has sufficiently pled that Defendants acted outside the scope of their authority by alleging that Defendants acted "malicious[ly]" and "intentionally and deliberately caused [him] to fear for his life, health, safety,

9

and well-being." 549 N.E.2d at 1247;(Dkt. 70 ¶¶ 71, 72.). By pleading sufficient facts about the nature of the alleged attack by Defendants, Mays has pled that Defendants were acting outside the scope of their authority. The Court therefore denies the motion to dismiss as to Mays's intentional infliction of emotional distress claim against Defendants in their individual capacities, finding that that this claim does not violate Illinois's sovereign immunity.

## Conclusion

For the foregoing reasons, the Defendants' motion to dismiss (Dkt. 113) is granted in part and denied in part. Mays's claims for assault and battery and intentional infliction of emotional distress are dismissed as to Defendants in their official capacities. Defendants' motion is denied as to Mays's claims for assault and battery and intentional infliction of emotional distress as to Defendants in their individual capacities.

ENTERED: 9/27/2023

*Nancy L. Maldonado*
_____
Nancy L. Maldonado
United States District Court Judge